## CONNECTICUT RIVER RAILROAD COMPANY *vs.* SAMUEL WILLISTON.

If an agreement between two railroad corporations provides that what is reasonable and necessary to be done by one of them, at the expense of the other, pursuant to certain contracts between them, and what is a reasonable expense for doing it, shall be determined by the superintendent of the first corporation and another person named; and afterwards, and before the time for making the determination, the office of such superintendent is abolished by the corporation, and the duties of superintendent assigned to its president; he is the proper person to join in the determination, and it is for the jury to determine who is in fact discharging the duties of superintendent at the time of the determination. And an agreement between such president and an agent of the other corporation, that the latter may be present at the hearing and may make objections to any item of such expense is immaterial, and its admission in evidence no ground of exception.

In an action upon a guaranty of payment of all money to be found due from one corporation to another by persons named in a written agreement, the failure of the second corporation to do a certain thing which it had agreed to do before the determination of that amount is no ground of defence, if the persons named in the agreement have proceeded to make the determination with the assent of both corporations.

MERRICK, J.[*] It appears from the bill of exceptions that on the 20th of March 1858 the plaintiffs and the Hampshire and Hampden Railroad Company made and entered into certain written contracts with each other respecting their joint occupancy of the new passenger-house at Northampton. It was a part of their agreement, as expressed in one of these contracts, that what was reasonable and necessary to be done by the last named company, at the expense of the first, pursuant to their mutual agreements in carrying the proposed object into effect, and what would be a reasonable expense to be incurred in doing it, should be deter-

---

[*] DEWEY, J. did not sit in this case.

mined by Samuel Ashburner and the superintendent of the Connecticut River Railroad Company. The defendant, in the written guaranty declared on in this action, promised the plain-tiffs, for a consideration, the sufficiency of which is not contested, that whatever should be found due to them on the performance of that contract should be promptly paid. Afterwards, and sub-sequently to the time when the parties had come into the actual use and joint occupancy of the passenger-house, the several claims which the plaintiffs preferred for fitting it up for their common use, and for the alleged execution on their part of all that was necessary to be done to carry the proposed object into effect, were left to the determination of said Ashburner and of Daniel L. Harris, the president and acting superintendent of the Connecticut River Railroad Company. They found the amount to be paid by the Hampshire and Hampden Railroad Company to be $ 2362.31, which is the sum demanded in this action.

The first and principal question which arises upon the facts stated in the bill of exceptions, is whether Harris was, within the meaning of the provisions of the contract between the parties, at the time when he thus acted with Ashburner in ascertaining the amount which was due from one of them to the other, the superintendent of the Connecticut River Railroad Company. This is denied by the defendant, and he accordingly insists that the accounts between the parties have not been properly ad-justed according to the terms of their agreement, and that the sum demanded in this suit has never been rightly found to be justly due from the Hampshire and Hampden Railroad Com-pany. But he concedes the correctness of the position taken by the plaintiffs, that the parties did not intend, and that it would not be a correct conclusion from their contract upon a proper interpretation of its provisions to assert, that the deter-mination of the amount due to the plaintiffs was to be made in connection with Ashburner by Brinsmade, who was the su-perintendent when the contract was entered into; but that it was to be made by the person, whoever he should be, who should be such superintendent when the time should arrive for

making such determination. This position, concerning which there is no difference of opinion between the two parties, appears to us to be perfectly correct; and in view of it, there seems no difficulty or doubt in reaching the conclusion that Harris did occupy such position and stand in such relation to the company, that he is to be considered as the person designated in the contract, who was to act in concert with Ashburner in ascertaining and determining the amount which was due and payable to the plaintiffs under and in pursuance of the contract. It is true that he was not nominally and in terms called the superintendent; but he was so in fact. The jury have found that he was the acting superintendent, and of this, upon the evidence reported, there could be no doubt. He was the president of the corporation; and the stockholders at a legal meeting had voted that the duties of president and superintendent should be discharged by one and the same person. In pursuance of this vote, the directors abolished the office of superintendent as a separate and distinct employment; but all the duties pertaining to it remained still to be performed, and they were assigned to the president, who thereupon became subject to the obligations, and entitled to exercise all the power and authority, requisite to the discharge of the duties imposed upon him in this new relation. He was therefore, though his office was described by another name, both in fact and in right the superintendent of the company; and occupying that position, he was very plainly the person who was to ascertain with Ashburner, what was reasonable to be done by the plaintiffs in the performance and execution of their contract, and what sum of money such performance would entitle them to demand and recover of the Hampshire and Hampden Railroad Company. The plaintiffs had an uncontroverted right to appoint their own superintendent, and thus, by the terms of the contract, to name the person who, with Ashburner, was to find what was due to them, and to decide upon the points of difference between the parties. It certainly could make no difference to the Hampshire and Hampden Railroad Company, nor does it show the failure of a strict compliance with the terms of the agreement, that the

person who was invested with the authority and subjected to the responsibilities of the superintendent held also another office, or was designated by a different name. In the interpretation of a contract, the real intention and purpose of the parties, when plainly and distinctly manifested in its provisions, is always to prevail over the mere literal signification of particular expressions which may be used in it.

The court being of opinion that it results from the votes of the stockholders and directors of the company that Harris was the superintendent of the Connecticut River Railroad Company, if he entered upon and was engaged in the discharge of the duties which pertain to that office, according to the usual and ordinary distribution of labor and service to be performed by and among the persons employed in conducting the business of railroad companies, it was competent and proper to submit to the jury, in conformity to the request of the plaintiffs, the question whether he was in fact acting in that capacity. Upon this question, the testimony of Harris, that he was engaged in the discharge of those duties and that the defendant knew it, is obviously unobjectionable.

The admission in evidence of the instrument signed by Yeamans on the one part, and Harris on the other, under the date of December 21st 1858, in which it was agreed that Yeamans, who was the general agent of the Hampshire and Hampden Railroad Company, might be present at the meeting of Harris and Ashburner to determine the questions submitted to them, and might point out such items in the bills of expenses as he considered unnecessary or unreasonable, and that the consent of Harris to act with Ashburner should not be construed as an acknowledgment by Harris of the validity of the contracts, but that if they should turn out to be valid, the bills passed upon by Harris and Ashburner should not again be questioned by the Hampshire and Hampden Railroad Company, seems to be wholly unimportant, as it did not affect the rights of the parties, either as to what was necessary or reasonable to be done in the execution of their previous contract, or as to what would be a reasonable expense to be incurred in the performance of it. Yeamans

might properly point out any item of expense which he thought objectionable ; but the question of its allowance was still left to be decided by the referees.

No sufficient reason is assigned for setting aside or disregarding the determination of Ashburner and Harris upon the questions submitted to them. It is said by the defendant to have been premature, because the plaintiffs had not done everything which they had stipulated for in one or the other of the two contracts entered into on the 20th of March 1858. The only failure or omission on their part in this respect, which has been suggested, is, that they had not caused " the old passenger-house to be removed from ten to twenty feet," as they had agreed to do. Now if the court erred, as is insisted by the defendant, in ruling that the two contracts of the 20th of March were not to be treated as one agreement, (upon which we think there is no reason to express any opinion,) it affords, under the circumstances stated, no reason for disturbing the verdict. The parties had a perfect right to determine for themselves what should constitute a complete performance of their contract or contracts ; and either of them might, if they should, for reasons satisfactory to themselves, think fit to do so, waive the failure or omission to conform to, or comply with, a single and particular stipulation. The parties were content to consider that the contract had been so performed, on the part of the plaintiffs, as to entitle them to have the sum due to them from the Hampshire and Hampden Railroad Company ascertained and determined. This having been done to their satisfaction, the defendant has no right under his contract to object to it. He would indeed have been equally bound if they had fairly and truly adjusted the claims of the plaintiffs, and thus agreed between themselves upon the sum which was to be paid to them. He guarantied that, however found, it should be promptly paid. *Exceptions overruled.*

*N. A. Leonard & M. B. Whitney*, for the defendant.

*R. A. Chapman & F. Chamberlin*, for the plaintiffs.